# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 50286 | **DATE** | 12/13/2012 |
| **CASE TITLE** | Rubloff Algonquin Portfolio, L.L.C. vs. Kohl's Department Stores, Inc. et al | | |

**DOCKET ENTRY TEXT:**

For the reasons stated below, plaintiff's motion for extension of time to file a notice of appeal [47] is denied.

*Philip G. Reinhard*

■[ For further details see text below.]  Electronic Notices.

## STATEMENT-OPINION

  Plaintiff filed a motion for extension of time to file a notice of appeal pursuant to Fed. R. App. P. 4(a)(5)(A). Defendants filed an objection to the motion for extension of time, and plaintiff filed a reply.
  A final judgment was entered in favor of defendants on August 3, 2012. The 30- day notice of appeal period expired on September 4, 2012. Plaintiff filed its motion for extension of time to file its notice of appeal on October 2, 2012.
  A timely motion of appeal is a prerequisite to appellate review. Sherman v. Quinn, 668 F. 3d 421, 424 (7th Cir. 2012). In a civil suit, a notice of appeal must be filed within 30 days from the entry of judgment. Sherman, 668 F. 3d at 424 (citing 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A)). Under Rule 4(a)(5), the district court may extend the time to file a notice of appeal if a party moves no later that 30 days after the original deadline for the filing of the notice of appeal and that party shows excusable neglect or good cause. Sherman, 668 F. 3d at 424- 25.
  The good cause and excusable neglect standards have different domains. Sherman, 668 F. 3d at 425. The excusable neglect standard is based on fault. In such situations, the need for an extension of time is usually occasioned by something within the control of the movant. Sherman, 668 F. 3d at 425. Good cause, however, applies in situations where there is no fault such as the postal service failing to deliver a notice of appeal. Sherman, 668 F. 3d at 425.
  The question of whether neglect is excusable is an equitable one, taking into consideration all relevant circumstances such as: (1) the danger of prejudice to the non- moving party; (2) the length of the delay and its impact on judicial proceedings; (3) the reason for the delay (i.e., whether it was within the reasonable control of the movant); and (4) whether the movant acted in good faith. Sherman, 668 F. 3d at 425- 26. As to the length of delay and prejudice, those are likely to be insignificant because the neglectful party has a limited time (60 days) to seek relief. Sherman, 668 F. 3d at 426. Thus, "excusable" would be read out of the rule if inexcusable neglect were translated into excusable neglect by a mere absence of harm. McCarty v. Astrue, 528 F. 3d 541, 544 (7th Cir. 2008).

Excusable neglect is not a toothless standard. Abuelyaman v. Illinois State University, 667 F. 3d 800, 808 (7th Cir. 2011). The term refers to the missing of a deadline as a result of such things as misrepresentation by a judicial officer, lost mail, and plausible misinterpretation of an ambiguous rule. Abuelyaman, 667 F. 3d at 808. On the other hand, it is not merciless and takes into account all relevant circumstances surrounding the party's omission. Abuelyaman, 667 F. 3d at 808. Thus, this standard involves a balancing test where a delay might be excused even if the reasons for the delay are not particularly compelling. Abuelyaman, 667 F. 3d at 808.

Generally, a simple miscalculation of time is not sufficient reason to extend the time allowed to file a notice of appeal, Sherman, 668 F. 3d at 426, and judges do not have carte blanche authority to allow untimely appeals. McCarty, 528 F. 3d at 544. Nor does the heavy workload of counsel that caused him to overlook the time for appeal constitute excusable neglect. Sherman, 668 F. 3d at 426. At least one exception to this latter situation is where an attorney is particularly busy with court- appointed cases. Sherman, 668 F. 3d at 426. This is so because, while the excusable neglect standard is a "narrow one," which a heavy workload rarely satisfies, the good faith behavior of counsel, as reflected in counsel's " excess of public service and altruism," can justify an extension of time. Sherman, 668 F. 3d at 426- 27.

In this case, plaintiff's attorney, Thomas Lester, relies on excusable neglect as opposed to good cause. In doing so, he states that he did not file a timely notice of appeal for one simple reason: he failed to read an email from the court via the ECF system notifying him that summary judgment had been granted in favor of defendants and the case had been closed. He further asserts that while this was neglectful it should be excused because: (1) this is an isolated incident in that it is the first time he has missed a court order or judgement via the ECF system; (2) there is no prejudice to defendants or the appellate judicial proceedings; and (3) he has demonstrated good faith though his customary practice of notifying both the client and an appellate attorney in his firm of any adverse and appealable trial court rulings.

Lester has also submitted his affidavit in which he avers, in pertinent part, that he was the attorney solely responsible for handling this case. According to Lester, Michael Iasparro, another attorney in the firm who filed an appearance in the case, was involved only to the extent of "negotiating the case management order and a court appearance on the same." Lester further states that Iasparro has not been involved in the case since that time and was not involved in the motion for summary judgment.

Lester further avers that the first time he was aware that summary judgment had been entered was "sometime during the week of September 17, 2012, when [he] spoke to the defendants' attorney." Lester then examined his emails and discovered the email notifying him of the summary judgment and that it had been sent at 3:27 pm on Friday, August 3, 2012. According to Lester, he promptly told his client about his omission but did not report the situation to the firm's attorney immediately because he "believed there was no recourse for a missed notice of appeal deadline." He first alerted the attorney on October 1, 2012.

Additionally, Lester states in his affidavit that he receives dozens of emails daily and that it is his practice to read all emails he receives through a court's ECF system promptly. Because he did not see this email, he did not follow his customary practice of notifying one of the firm's appellate attorneys.

Finally, Lester states that he has been "exceedingly busy working on files" and has had difficulty delegating work because other attorneys are similarly busy. He also identifies numerous matters that he was handling during the relevant time period (30 days after the summary judgment order).

Plaintiff has also submitted the affidavit of Iasparro which states that his involvement in the case "was very limited and early in the litigation." He negotiated the case management order, recalls appearing "on this document," but had "no involvement in the motion for summary judgment or other matters that [he] can recall." While he received emails related to the case because of his appearance, he has not "followed it" because it was Lester's case. Finally, Iasparro states that Lester's assistant receives emails and dockets any dates in any orders but she did not do so as to the summary judgment order as there was no date therein to docket. According to Iasparro, she is not an attorney and would not know about the applicable appeal

deadline.

Defendants, in their response, identify several discrepancies regarding the Lester and Iasparro affidavits. Defendants correctly note that while Lester refers to email in the singular there were in fact two emails generated and sent to Lester and Iasparro on August 3, 2012, one notifying them of the entry of summary judgment in favor of defendants and the other notifying them of the court's written opinion granting summary judgment. Defendants also point out that Iasparro did in fact appear at a discovery hearing before the Magistrate Judge on July 25, 2012, and that at that time he was advised by the Magistrate Judge that the pending motion for summary judgment was "near the top of the list" for decision by this court and that he expected a decision "at any time." Thus, the Magistrate Judge set the matter for a telephonic conference on August 30, 2102, because he "honestly believ [ed] [the parties] got a chance of having [a decision on the summary judgment motion] by then."

While the court is sympathetic to plaintiff's plight and recognizes Lester's competence as an attorney and his general history of compliance with rules and procedures before this court, there is simply no showing of excusable neglect in this case sufficient to justify an extension of the time to file a notice of appeal. Lester must show more than merely that he was a very busy attorney during the relevant time frame.[1] In fact he has not asserted that he was too busy to look at his emails, but rather, that in doing so he overlooked "this email." His having a busy practice really does not explain such an oversight let alone excuse it. Further, it seems a bit incredulous that a sophisticated law firm such as Lester's does not have in place a system of checks and balances to effectively prevent such a simple oversight from occurring. This is especially troubling in light of the fact that at least three people at the firm, Lester, Iasparro, and Lester's assistant received the two emails.[2]

The court further finds it difficult to understand how Lester did not discover the summary judgment disposition within the 30- day notice of appeal period which would have expired on September 4, 2012. This is so because Iasparro, an attorney on the case, attended the discovery conference on July 25, 2012, at which the Magistrate Judge set a telephonic conference for August 30, 2012. Regardless of whether Lester, Iasparro, or another attorney was assigned to participate in the August 30 conference, they should have been alerted to the fact the case had been closed when there was no conference on August 30.[3] At least it seems reasonable to the court that someone from the firm, assuming the telephonic conference was calendered and assigned to an attorney, should have inquired as to why it was "cancelled" which would have in turn led directly to the fact the case had been closed following entry of summary judgment. Had someone done so, the notice of appeal could have been filed on time.

Further, defendants' attorneys sent Lester and Iasparro two emails on August 24, 2012, discussing the issue of attorney fees. While the text of the emails do not expressly refer to the entry of summary judgment, they certainly imply as much considering that fees were potentially available under the contract to the prevailing party in the case. Moreover, the billing statements attached to the emails expressly refer to an attorney's review on August 6, 2012, of the "order granting summary judgment." The two emails and the attachments thereto, had they been thoroughly reviewed when received or shortly thereafter, would have revealed the entry of summary judgment in favor of defendants on August 3, 2012, and allowed ample time to file a notice of appeal.

Additionally, assuming what Lester states is true, he was first aware of the summary judgment disposition when he spoke to defendants' attorney "sometime during the week of September 17, 2012." While he promptly advised his client, he did not file the motion for extension of time until October 2, 2012. Giving Lester the benefit of the doubt by assuming he spoke to defendants' attorney as late as September 21, 2012(the last day of the week of September 17), it was still 11 days until he filed the present motion. The only reason he suggests for this additional delay is that he "believed there was no recourse for a missed notice of appeal deadline."

The court finds this explanation disingenuous. It is hard to imagine that an experienced attorney such as Lester would be unaware of Rule 4(a)(5). Further, even if he was actually unaware of the rule, an

| STATEMENT-OPINION |
|---|

experienced attorney should have instinctively considered whether such an equitable escape hatch might be available and at the very least researched the issue. Such research would have readily revealed Rule 4(a)(5) and its requirements. It is more unimaginable that it took 11 days to figure it out, especially as an attorney in Lester's position would surely have looked high and low for a way out of the obvious predicament. While the court recognizes that the additional delay did not result in any real prejudice to defendants or the appellate process, it certainly runs counter to any argument of diligence.

While the court is reluctant to dispose of any motion or case or to deny relief based on what some might view a "technicality," the deadline at issue in this case serves laudable purposes. Further, Rule 4 provides a means of avoiding the otherwise harsh consequences of non- compliance. But to take advantage of that option, an attorney must at least show that his neglect was excusable. Based on the totality of the circumstances here, when viewed in the light of the balancing of the relevant factors, this court finds plaintiff has not shown such excusable neglect under Rule 4(a)(5) and the applicable Seventh Circuit case law, and in its discretion denies the motion for extension of time to file a notice of appeal.

1. He expressly states that he was not working on any court- appointed matters during the relevant time period.

2. While the assistant was not a lawyer, it seems like a law degree would be unnecessary for the assistant to understand basic instructions about notifying an attorney whenever an email contained an order disposing of a case.

3. The telephonic conference would have "evaporated" once the case was closed.